

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Enrique González Sotomayor<br>Recurrido<br><br>v.<br><br>Mayagüez Resort & Casino<br>Peticionario | Certiorari<br><br>2009 TSPR 140<br><br>176 DPR ____ |

Número del Caso: CC-2007-723

Fecha: 10 de septiembre de 2009

Tribunal de Apelaciones:

 Región Judicial de Mayagüez-Aguadilla Panel IX

Juez Ponente:
 Hon. Carlos Soler Aquino

 Abogado de la Parte Peticionaria:

 Lcdo. Julio I. Lugo Muñoz

 Abogado de la Parte Recurrida:

 Lcdo. Samuel Figueroa González

Materia: Despido Injustificado

Este documento constituye un documento oficial del  Tribunal Supremo que está sujeto a los cambios y correcciones del pr  oceso de compilación y publicación oficial de las decisiones  del Tribunal. Su distribución electrónica se hace como un servicio p  úblico a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Enrique González Sotomayor
        Recurrido


        v.                          CC-2007-723

Mayagüez Resort & Casino
        Peticionario



Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.


En San Juan, Puerto Rico, a 10 de septiembre de 2009.

Se nos solicita en este recurso la revocación de una sentencia emitida por el Tribunal de Apelaciones. En dicha sentencia, el foro apelativo intermedio confirmó el dictamen del Tribunal de Primera Instancia que declaró sin lugar una moción de desestimación presentada por el Hotel Mayagüez Resort & Casino, en adelante el Hotel. Debemos resolver si el foro primario carece de jurisdicción para atender la reclamación del demandante bajo la doctrina de campo ocupado. Resolvemos que la jurisdicción es de la Junta Nacional de Relaciones del Trabajo, por lo que se desestima la demanda.

I

El 13 de junio de 2006, el Sr. Enrique González Sotomayor, empleado del Hotel, presentó una querella bajo el procedimiento sumario que dispone la Ley Núm. 2 de 17 de Octubre de 1961. 32 L.P.R.A. Sec. 3118, *et seq*. Según surge de la querella enmendada, el empleado reclamó remedio al amparo de la Ley Núm. 80 de 30 de junio de mayo de 1976, 29 L.P.R.A. Sec. 185(a), *et seq.* (Ley de Despido Injustificado), Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. Sec. 194, *et seq.* (Ley de Represalias) y de la Constitución de Puerto Rico en su Art. II, Secs. 16, 17 y 18.

Según las alegaciones del propio recurrido, el 10 de marzo de 2006, éste solicitó a la gerencia del Hotel una reunión para plantear unos asuntos relacionados a su trabajo y derechos como empleado. La gerencia del Hotel le notificó por escrito que accedían a su pedido y citaron a todo el personal de su área a una reunión oficial. Ese mismo día, el supervisor del empleado le recriminó la solicitud y sus motivos. El día pautado, el empleado acudió al área donde estaba pautada la reunión pero fue llevado a la oficina de recursos humanos, donde fue despedido. Esto es, el mismo día en que se le concedió al recurrido la reunión que solicitó, fue despedido. Por esta razón, el recurrido no pudo estar presente en la reunión. En la querella, éste añadió que "[h]uelga decir que la reunión nunca se llevó a cabo". Apéndice Sol. *Cert.*, pág. 9.

Expresamente en su querella, el empleado arguyó que la razón de su despido fue por el "uso válido de su derecho constitucional de participar en actividades concertadas y a reclamar derechos que como empleado le corresponden". Apéndice del recurso, pág. 9. En la querella éste manifestó que el Hotel entendía que "estaba tratando de organizar a los empleados de su departamento y procedió a despedirlo; en violación a los derechos constitucionales" de éste. *Ibíd.* Concluye el empleado en la querella que por razón "del despido inconstitucional" procedía una indemnización de $13,510.00 al amparo de la Ley de Despido Injustificado, *supra*.

El 22 de junio de 2006, el Hotel presentó su contestación a la querella enmendada. En la misma, el Hotel contestó las alegaciones hechas por el recurrido y solicitó la desestimación del recurso por falta de jurisdicción. En específico, el Hotel discutió varias veces en ese escrito que la Junta Nacional de Relaciones del Trabajo tenía jurisdicción exclusiva porque el campo está ocupado por legislación federal.

El 8 de febrero de 2007, el recurrido sometió un memorando de derecho en donde expresaba que ejercitaba dos causas de acción, a saber, una por el despido sin justa causa y otra por las represalias que sufrió tras solicitar la discusión de situaciones que afectaban a todos los empleados en su área de trabajo. Según las alegaciones del recurrido, "la razón para haberlo despedido fue el hecho de que [é]ste

había solicitado una reunión a la Gerente de Recursos Humanos, para discutir ciert[a]s situaciones en su área de trabajo, las cuales le estaban afectando a él y a sus compañeros". Apéndice Sol. *Cert.*, pág. 28. Además, el recurrido arguyó que su despido justo antes de la reunión solicitada fue en represalia por sus actuaciones. En ese escrito, el recurrido manifestó que solicitó la reunión para discutir "condiciones de trabajo" y que se le despidió por "pedir reunirse para discutir asuntos concernientes a su trabajo". *Id.*, págs. 32-33. Cabe destacar que la reunión fue solicitada por el recurrido y por otro empleado de su departamento, el Sr. Raymond Betances López. *Id.*, pág. 34.

El 16 de marzo de 2007, el Hotel presentó una moción de desestimación de la querella por falta de jurisdicción sobre la materia. La moción se sustentó en que las alegaciones del empleado se basan en la supuesta violación de derechos consagrados en legislación federal que ha privado de jurisdicción a los tribunales estatales. Razonó el Hotel que la Ley Taft-Harley, 29 U.S.C.A. secs. 157 y 158, por disposición expresa, prohíbe el ejercicio de jurisdicción de los tribunales de justicia locales. En la moción, el Hotel expuso que según las alegaciones de la querella las reclamaciones del recurrido se fundamentan en violaciones de derechos reconocidos por legislación federal que expresamente ha ocupado el campo y privado al Tribunal de Primera Instancia de jurisdicción sobre el asunto.

El Tribunal de Primera Instancia, el 23 de abril de 2007, declaró no ha lugar la moción del Hotel. Inconforme con esta determinación, el Hotel acudió al Tribunal de Apelaciones, el cual confirmó la resolución emitida por el foro primario.

El Hotel acude ante nos y en síntesis alega que incidió el foro apelativo intermedio al no determinar que el Tribunal de Primera Instancia carecía de jurisdicción para atender la controversia. Además, expone que la reclamación no cumple con los elementos necesarios para una acción al amparo de la Ley Núm. 115, *supra*.

Expedimos el auto de *certiorari*. Debidamente sometidos los alegatos de las partes, procedemos a resolver la controversia planteada.

## II-A

La controversia principal que se nos plantea en autos es si el Tribunal de Primera Instancia tiene la autoridad para atender la reclamación de un obrero que solicita un remedio al amparo de la legislación local y que arguye que su despido fue en represalia a sus acciones concertadas para reclamar derechos laborales.

La Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 10.2, establece como fundamento para solicitar la desestimación de una reclamación la falta de jurisdicción sobre la materia. Este Tribunal ha expresado que la jurisdicción es el poder o autoridad que posee un tribunal para considerar y decidir un caso o controversia. A.S.G. v.

Mun. San Juan, 2006 T.S.P.R. 113, 2006 J.T.S. 124, 168 D.P.R. ___ (2006). La Regla 10.2, *supra*, recoge defensas que pueden levantarse, a opción del demandado, en una moción de desestimación antes de contestar o en la misma contestación a la demanda. R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 2601, pág. 230.

Ahora bien, la Regla 10.2, *supra*, recoge algunas defensas que son privilegiadas y que pueden levantarse en cualquier momento durante el proceso. Hernández Colón, *op cit.*, pág. 234. La Regla 10.8(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 10.8(c), dispone que "[s]iempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito". Bajo esta disposición, se puede desestimar una reclamación por ser de jurisdicción de una agencia administrativa o de la esfera federal. Hernández Colón, *op cit.*, pág. 234. Esto significa que es al amparo de la Regla 10.8(c) que se ordena a los tribunales locales desestimar una acción civil cuando surge la falta de jurisdicción sobre la materia ante el foro aludido.

Anteriormente, hemos sido enfáticos en que la "ausencia de jurisdicción sobre la materia trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogársela; (3) conlleva la nulidad de los dictámenes

emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*". Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997); Vázquez v. A.R.PE., 128 D.P.R. 513 (1991). Tan pronto el tribunal determine "que no tiene jurisdicción sobre la materia, viene obligado a desestimar el caso. Regla 10.8(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III". Pagán v. Alcalde Mun. de Cataño, *supra*.

"Las cuestiones de jurisdicción por ser privilegiadas deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo". Autoridad Sobre Hogares v. Sagastivelza, 71 D.P.R. 436, 439 (1950). Véase, además, Pérez Rosa v. Morales Rosado, Opinión de 28 de septiembre de 2007, 2007 T.S.P.R. 177, 2007 J.T.S. 183 pág. 205, 172 D.P.R. ___, ___ (2007). Al hacer esta determinación, debe desestimarse la reclamación "sin entrar en los méritos de la cuestión ante sí". González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 63 (1989).

B

Como norma general, los tribunales estatales tienen jurisdicción o autoridad para atender todo asunto al amparo de las leyes estatales y jurisdicción concurrente con los

tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales. Tafflin v. Levitt, 493 U.S. 455 (1990). Ahora bien, hay jurisdicción exclusiva del gobierno federal sobre asuntos de derecho federal cuando el Congreso dispone expresamente para ello o cuando la intención clara de la ley es privar a los tribunales estatales de la autoridad sobre dicho asunto federal. Rodríguez v. Overseas Military, 160 D.P.R. 270, 277-278 (2003); Yellow Freight System v. Donelly, 494 U.S. 820, 823 (1990). Además, en Rodríguez v. Overseas Military, *supra*, resolvimos que aun en un enclave federal, cuando no hay legislación federal que atienda una controversia directamente, aplica la ley estatal si ésta no ha sido desplazada por el Congreso.

La doctrina de ocupación del campo se ha desarrollado para evitar conflictos regulatorios y así fomentar una política uniforme. Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517, 523 (1977). El Congreso puede ocupar el campo de un asunto federal y excluir la regulación local. English v. General Electric, 496 U.S. 72, 78-79 (1990).

La legislación federal para regular las relaciones obrero-patronales se promulga por autoridad de la Cláusula de Comercio de la Constitución de los Estados Unidos. D. Fernández y C. Romany, Derecho Laboral: Casos y Materiales, 1ra ed., Río Piedras, Ed. de la U.P.R., 1987, T. I, pág. 53. En el ejercicio de su autoridad discrecional, el Congreso

extendió a Puerto Rico la aplicación de la ley.[1] El Tribunal Supremo de los Estados Unidos ha expresado que "[i]t is clearly within Congress' powers to establish an exclusive federal forum to adjudicate issues of federal law in a particular area that Congress has the authority to regulate under the Constitution". International Longshoremen´s Association v. Davis, 476 U.S. 380, 388 (1986).

Los problemas jurisdiccionales bajo la doctrina de campo ocupado tienen dos aspectos, a saber, el legislativo y el adjudicativo. El concepto de jurisdicción legislativa versa sobre "quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación… La jurisdicción legislativa se refiere a qué ley aplica a determinada controversia… Mientras que, por otro lado, la jurisdicción judicial se refiere a cuál tribunal (estatal o federal) está autorizado para atender en las controversias que se susciten dentro del enclave". Rodríguez v. Overseas Military, supra, a la pág. 279.

En 1947, el Congreso aprobó la Ley federal *Labor Management Relations Act*, también conocida como la Ley Taft-Hartley. 29 U.S.C. sec. 141 *et seq*. Esta ley reconoce el derecho de los trabajadores a organizarse y negociar colectivamente con su patrono sobre asuntos relativos al

---

[1] "No cabe duda, ni se cuestiona en este recurso, que la ley federal conocida como 'Labor-Management Relations Act of 1947', *supra*, es de aplicación a Puerto Rico. Véanse: Ley de Relaciones Federales con Puerto Rico, Sec. 9, 48 U.S.C.A. sec. 734; N.L.R.B. v. Security National Life Insurance Co., 494 F.2d 336 (1st Cir. 1974)". Rivera v. Security Nat. Life Ins. Co., *supra*, pág. 522.

empleo. Es decir, el estatuto otorga a los empleados cubiertos el derecho de adelantar colectivamente sus intereses. De este modo, los empleados pueden procurar el establecimiento y seguimiento de normas para mejorar sus condiciones de trabajo. Muchos de estos logros incluyen reglas de antigüedad como base para adquirir derechos.

El estatuto dispone en lo pertinente:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title. [29 U.S.C. sec. 157.]

Por otra parte, la ley establece como prácticas ilícitas del trabajo el interferir con el ejercicio de los derechos garantizados en la Sec. 157, *supra*, y el interferir con la formación de una organización laboral. 29 U.S.C. Sec. 158(a)(1) y (2). Bajo esta disposición federal, se considera una práctica ilegal por parte del patrono el interferir, restringir o coaccionar a empleados en el ejercicio de sus derechos bajo la Sec. 157, *supra*. Entre éstos se encuentra el derecho a organizarse y a realizar actividades concertadas con el propósito de negociar colectivamente o para ayudarse mutuamente. Para velar por el cumplimiento de esta ley se creó la Junta Nacional de Relaciones del Trabajo. 29 U.S.C. Sec. 153.

La Sec. 160 de la ley federal, *supra*, reconoce la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo para resolver controversias que involucran una práctica ilícita del trabajo. Garner v. Teamsters, 346 U.S. 485 (1953). Además, se ha reconocido la aplicación de la doctrina de campo ocupado a la reglamentación de actividad protegida por la Sec. 157, *supra*, o cuando la regulación estatal entra en conflicto con la intención del Congreso. Lodge 76 v. Wisconsin, 427 U.S. 132 (1976). Esto se debe a la necesidad de uniformar ciertos aspectos de la actividad sujeta a regulación. San Diego Building v. Garmon, 359 U.S. 236, 242-243 (1959). El discrimen por afiliación sindical es una práctica ilícita del trabajo que le confiere jurisdicción exclusiva a la Junta Nacional de Relaciones del Trabajo. Vargas v. Molinos Nacionales, Inc., 134 D.P.R. 919 (1993).

La Sec. 160(a), *supra*, dispone:

Powers of Board generally. The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision

of this Act or has received a construction inconsistent therewith.

Hay jurisdicción exclusiva de la Junta Nacional sobre actividades protegidas por la Sec. 157, *supra*, o que constituyen una práctica ilícita del trabajo bajo la Sec. 158. International Longshoremen v. Davis, *supra*. En otras palabras, la jurisdicción exclusiva de la Junta Nacional se da en aquellos casos en que la actividad particular se encuentra regulada bajo las Secs. 157 ó 158, *supra*.

Sin embargo, un estado puede reglamentar actividades de carácter marginal (*peripheral*) a la ley federal. Belknap v. Hale, 463 U.S. 491, 498 (1983); Farmer v. Carpenters, 430 U.S. 290, 296 (1977). Además, puede haber jurisdicción estatal cuando la conducta reglamentada por el estado contiene un alto interés profundamente arraigado a su gobierno y está ausente la intención clara del Congreso para suprimir dicha jurisdicción estatal. Belknap v. Hale, *supra*; San Diego Buiding v. Garmon, *supra*, pág. 244. En cambio, los estados y Puerto Rico no tienen facultad para intervenir en asuntos bajo la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo. Rivera v. Security Nat. Life Ins. Co., *supra*.

Sobre la doctrina de campo ocupado, el Tribunal Supremo de los Estados Unidos expresó en Sears v. San Diego, 436 U.S. 180, 198 (1978):

> The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to

(as in *Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

Un tribunal o agencia estatal puede ejercer jurisdicción sobre disputas obrero-patronales cuando la agencia federal decline ejercitar su autoridad. Fernández, *op cit.*, pág. 56. En Puerto Rico, la Junta de Relaciones del Trabajo es quien viene facultada a asumir jurisdicción exclusiva en aquellos casos en que la Junta Nacional se niega a ejercitar su autoridad. Vargas v. Molinos Nacionales, Inc., *supra*; Fernández, *op cit.*, pág. 57. La Junta de Relaciones del Trabajo de Puerto Rico tiene jurisdicción exclusiva para atender controversias predicadas en alguna práctica ilícita del trabajo. 29 L.P.R.A. Sec. 68(a); Plan de Salud U.I.A. v. A.A.A., 2006 T.S.P.R. 178, 2006 J.T.S. 186, 169 D.P.R. ___ (2006); Martínez Rodríguez v. A.E.E., 133 D.P.R. 986 (1993). Igualmente, una actividad patronal que interfiera o restrinja los derechos de los obreros a organizarse y negociar colectivamente es una práctica ilícita del trabajo sujeta a la jurisdicción exclusiva de la Junta. F.S.E. v. J.R.T., 111 D.P.R. 505 (1981).

III

En esta ocasión debemos resolver si la querella traída ante el Tribunal de Primera Instancia por el señor González

Sotomayor era una controversia de exclusiva jurisdicción de la Junta Nacional. Resolvemos en la afirmativa.

Según las propias afirmaciones del querellante: primero, éste solicitó reunirse con su patrono para reclamar sus derechos y para discutir situaciones en su trabajo que le afectaban a él y a sus compañeros; y segundo, fue despedido el mismo día de la reunión, en represalia por ejercitar su derecho a realizar actividades concertadas para reclamar derechos como empleado. Específicamente, el propio querellante arguye que se le violaron sus derechos ya que el Hotel entendía que trataba de organizar a los empleados. Alega el querellante, aquí recurrido, que el despido que sufrió fue producto de su pedido para discutir condiciones de trabajo que afectaban a todos los empleados en su área de trabajo. Es evidente que el reclamo del querellante se fundamenta en las represalias que él alega que ha sufrido por realizar "actividades concertadas" en relación a derechos de índole obrero-patronal.

Cuando un tribunal ausculta su jurisdicción debe examinar si puede adjudicar válidamente la reclamación presentada ante su consideración. En relación a la Ley Taft-Hartley, *supra*, el Congreso dentro de su poder, ha ocupado el campo, lo que impide la reglamentación de actividad protegida por la Sec. 157, *supra*, y ha conferido la jurisdicción exclusiva sobre estos asuntos a la Junta Nacional. Vargas v. Molinos Nacionales, Inc., *supra*; Lodge 76 v. Wisconsin, *supra*. Un empleado que reclame ser despedido por realizar

actividad protegida por la Ley Taft Hartley, *supra*, sólo tiene derecho al remedio que le concede dicha ley y los tribunales locales no tienen facultad para intervenir en estos asuntos. Rivera v. Security Nat. Life Ins. Co., *supra*.

Para determinar si un tribunal local puede adjudicar una controversia bajo esta ley hay que examinar si la controversia es idéntica o diferente de la que ha podido ser presentada ante la Junta Nacional. Sears v. San Diego, *supra*. Precisamente cuando la conducta alegada está sujeta a ser sancionada por la Ley Taft-Hartley es que opera la doctrina de jurisdicción exclusiva de la Junta Nacional.

"Precisa destacar que el análisis de desplazamiento se efectúa tomando en consideración **el tipo de conducta involucrada y no la naturaleza del remedio solicitado**". Opinión de Conformidad de la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ, a la que se unió el Juez Presidente señor HERNÁNDEZ DENTON, en Díaz Arroyo v. Hosp. Dr. Susoni, res. en 21 de septiembre de 2006 (Sentencia), 2006 T.S.P.R. 146, 2006 J.T.S. 155 pág. 222, 169 D.P.R. ___, ___ (2006) (énfasis en el original). Véanse, Local 100 of United Ass'n of Journeymen and Apprentices v. Borden, 373 U.S. 690 (1963); San Diego Building v. Garmon, *supra*. Es decir, la jurisdicción exclusiva de la Junta Nacional "depende del tipo de conducta envuelta y no de la naturaleza del remedio solicitado". Díaz Arroyo v. Hosp. Dr. Susoni, *id.*, 2006 J.T.S. 155 pág. 232 (Opinión Disidente emitida por la Jueza Asociada señora FIOL MATTA). Al respecto, la Junta Nacional tiene "jurisdicción

exclusiva para atender los reclamos que surjan al amparo de la ley, en particular, las conductas protegidas por la sección 7 del *Labor Management Relations Act* o las conductas que constituyan una práctica ilícita bajo la sección 8 de la ley". *Ibíd*.

En Vargas v. Molinos Nacionales, Inc., *supra*, declaramos que la reclamación allí contenida era materia de exclusiva jurisdicción de la Junta Nacional y que correspondía a dicha entidad, en primera instancia, pasar juicio sobre la controversia. En aquella ocasión, se trataba de reclamaciones de indemnización por despido injustificado, discrimen sindical y falta al deber de justa representación. Este Tribunal desestimó dicha reclamación pues "[e]n la demanda y en la demanda enmendada de este caso se alegó específicamente que los demandados `no reclutaron nuevamente a los demandantes… por estar éstos afiliados a la Unión de Trabajadores…´" y que "[l]os propios demandantes denominaron tal alegación un `discrimen perjudicial´ por sus actividades obreras". Vargas v. Molinos Nacionales, Inc., *id.*, pág. 926. Para esto, concluimos que estas alegaciones describen una práctica ilícita que está regulada por la Ley Taft-Hartley.

De igual modo, en Díaz Arroyo v. Hosp. Dr. Susoni, *supra*, desestimamos el recurso incoado debido a la normativa federal. En dicha demanda, los familiares de una empleada despedida reclamaron indemnización en daños y perjuicios. La reclamación se fundamentó en que el despido de la empleada fue discriminatorio y como resultado de su activismo

sindical. Debido a que una de las cuestiones a adjudicar era si el patrono incurrió en discrimen sindical, procedía desestimar ya que el asunto era de exclusiva jurisdicción de la Junta Nacional. "Es menester resaltar que la doctrina de desplazamiento en el ámbito laboral impide que un tribunal de un estado o del Estado Libre Asociado entienda sobre una conducta proscrita por el NLRA, independientemente de si la misma violenta a su vez, derechos constitucionales o alguna legislación laboral estatal." Díaz Arroyo v. Hosp. Dr. Susoni, *id.*, 2006 J.T.S. 155, pág. 229 n. 13 (Opinión de conformidad de la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ a la que se unió el Juez Presidente señor HERNÁNDEZ DENTON).

Las alegaciones del aquí recurrido establecen una conducta regulada y catalogada como práctica ilícita al amparo de una ley. Esto es, el recurrido alega que ocurrió una conducta proscrita por la Sec. 8 de la Ley Taft-Hartley. 29 U.S.C. 158. Según sus propias alegaciones, el recurrido pretende dirimir entre otras cosas, si su despido fue en represalia por su gestión para reclamar los derechos que le correspondían a él y a sus compañeros. Es el recurrido quien alega que el Hotel entendía que trataba de organizar a los empleados. Determinar qué constituye una interferencia con una acción concertada protegida y adjudicar los hechos que configurarían o no dicha práctica ilícita, es jurisdicción exclusiva de la Junta Nacional. Si hubiera que adjudicar los hechos que configuran la práctica ilícita como paso previo para establecer la jurisdicción exclusiva de la Junta

Nacional se echaría por la borda el desplazamiento que ordena la ley federal. En efecto, el tribunal incurriría en el contrasentido de intervenir en los méritos de la controversia para decidir entonces que no puede hacerlo.

Conforme a lo antes enunciado constituye una práctica ilícita del trabajo interferir con los derechos garantizados por la Sec. 157, *supra,* esto es, el interferir con la formación de una organización laboral. Las actividades realizadas por el recurrido, según sus alegaciones, iban dirigidas a organizar a los empleados de su área y a solicitar los derechos que entendía que les correspondían a todos. El despido en alegada represalia por dicho intento de organización es un asunto tratado por la ley federal y de jurisdicción exclusiva de la Junta Nacional.

Al evaluar los planteamientos del señor González Sotomayor es forzoso concluir que su reclamación debe hacerse ante la Junta Nacional. De prosperar sus alegaciones, estaríamos ante una práctica ilícita del trabajo cobijada por la Ley Taft-Hartley, *supra*. Según el derecho antes descrito y los hechos argüidos, es la Junta Nacional el foro con jurisdicción exclusiva para atender el asunto. Los tribunales locales carecen de jurisdicción para atender esta queja.

En conclusión, ante la ausencia de jurisdicción sobre la materia, un tribunal sólo puede desestimar el asunto ante sí; nada más. Por definición, esa desestimación tiene que basarse en lo que se alega, pues el foro con jurisdicción exclusiva es el único autorizado a estimar cuáles son los hechos

probados, luego de sopesar la evidencia que en su día las partes presenten. En otras palabras, cuando la desestimación se basa en la jurisdicción exclusiva de otro foro, precisamente es ese otro foro el que viene llamado a dilucidar la controversia. Dicha adjudicación no puede ser válidamente hecha por un foro sin jurisdicción. Un tribunal no puede abrogarse jurisdicción donde no la tiene. S.L.G. Szendrey Ramos v. F. Castillo, Opinión de 16 de enero de 2007, 2007 T.S.P.R. 6, 2007 J.T.S. 12 pág. 705, 169 D.P.R. ___, ___ (2007); Morán v. Martí, 165 D.P.R. 356, 364 (2005); Martínez v. Junta de Planificación, 109 D.P.R. 839, 842 (1980).

IV

Por los fundamentos antes expuestos, se revoca la sentencia recurrida, emitida por el Tribunal de Apelaciones, Región Judicial de Aguadilla. En su lugar, se declara con lugar la moción de desestimación presentada por el Hotel y se dicta sentencia de conformidad, mediante la cual se desestima la querella, por falta de jurisdicción.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Enrique González Sotomayor
        Recurrido

              v.

                              CC-2007-723

   Mayagüez Resort & Casino
        Peticionario

*SENTENCIA*

En San Juan, Puerto Rico, a 10 de septiembre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia recurrida emitida por el Tribunal de Apelaciones, Región Judicial de Aguadilla. En su lugar, se declara con lugar la moción de desestimación presentada por el Hotel y se dicta sentencia de conformidad, mediante la cual se desestima la querella, por falta de jurisdicción.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Jueza Asociada señora Fiol Matta disiente con Opinión escrita a la que se une el Juez Presidente señor Hernández Denton. La Juez Asociada señora Rodríguez Rodríguez concurre sin opinión escrita.

                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Enrique González Sotomayor
        Recurrido

                                        *Certiorari*

        v.

Mayagüez Resort & Casino          CC-2007-723
        Peticionario


Opinión Disidente emitida por la Jueza Asociada señora Fiol Matta a la cual se une el Juez Presidente señor Hernández Denton


En San Juan, Puerto Rico, a 10 de septiembre de 2009.

Disiento enérgicamente de la conclusión a la que llega la mayoría de este Tribunal respecto al ejercicio de jurisdicción por nuestros tribunales en este caso. Preocupa, sobre todo, el que se deje sin jurisdicción a nuestra judicatura, de forma casi automática, con la mera alegación de que la actuación de un obrero constituyó una "actividad concertada" bajo la Ley Federal de Relaciones Obrero Patronales, mejor conocida como Ley Taft-Harley de 1947.

Es cierto que la Junta Nacional de Relaciones del Trabajo (NLRB, por sus siglas en

inglés) tiene jurisdicción exclusiva sobre la administración de la Ley Taft-Harley y sus procedimientos. En lo pertinente, la NLRB penaliza las prácticas ilícitas, incluyendo el despido como represalia por la realización de actividades concertadas por los trabajadores para defender sus derechos. No obstante, no podemos concluir, como lo hace la Opinión Mayoritaria, que la actuación del señor González Sotomayor constituía una "actividad concertada" sobre la base, exclusivamente, de las expresiones que el propio señor González Sotomayor hizo en su querella en contra de Mayagüez Resort & Casino. Esta interpretación es contraria a la definición legal y jurídica del término en el campo de las relaciones obrero patronales.

Según la Opinión Mayoritaria, en este caso se configuró una "actividad concertada" porque el señor González Sotomayor **alegó** que: (1) solicitó una reunión con su patrono para plantear asuntos relacionados con su trabajo y sus derechos como empleado; (2) fue despedido por su uso válido de su derecho constitucional de participar en actividades concertadas; y (3) su patrono Mayagüez Resort entendía que estaba tratando de organizar a los empleados de su departamento y por eso fue que lo despidió. A esta conclusión se llega a pesar de que el propio Hotel expuso en su alegación responsiva que el despido del señor González Sotomayor fue por cuestiones disciplinarias, **y sin que del expediente surja que Mayagüez Resort & Casino conocía o debía conocer de las alegadas actividades**

**concertadas del señor González Sotomayor.** También, esta conclusión se construye sin ni siquiera discutir qué es una actividad concertada y verificar si los requisitos de esta figura jurídica están presentes en los hechos particulares de este caso. Todo esto es contrario a la norma que establece que el nombre no hace a la cosa.

En resumen, la Opinión Mayoritaria presume: (1) la existencia de una práctica ilícita y (2) la existencia de un proceso de organización. De esa forma, concluye que había una "actividad concertada", planteando acríticamente que el campo está ocupado por la Ley Federal de Relaciones Obrero Patronales, Ley Taft-Harley de 1947. Esto, a pesar de que en realidad la iniciativa del señor González Sotomayor no pasó de ser un intento fallido de completar un proceso administrativo destinado a dilucidar condiciones de empleo individuales. Un proceso normal de libertad de expresión, derecho que está protegido por nuestra Constitución.

Si bien las actividades concertadas pueden darse fuera del ámbito de la negociación colectiva, toda actividad concertada incluye una intención de representar a los trabajadores ante el patrono, o proteger conquistas expresadas en quejas del grupo sobre condiciones de trabajo o para negociar colectivamente. Lo medular no es el contexto, sino que efectivamente haya una representación autorizada de parte de todos los trabajadores que dicen ser representados.

La Opinión Mayoritaria omite hechos medulares de este caso. Por esto, me veo obligada a exponer los hechos pertinentes a la controversia que surgen de los documentos que se incluyen en el legajo.

**I.**

El señor González Sotomayor trabajó para la corporación Mayagüez Resort & Casino hasta el 15 de marzo de 2006, fecha en que fue despedido del puesto de mozo que ocupaba en el departamento de banquetes. Previo a su despido, el 10 de marzo de 2006, el señor González Sotomayor y el Sr. Raymond Betances López solicitaron en el Departamento de Recursos Humanos una reunión para dialogar sobre asuntos relacionados con su trabajo y sus derechos como empleados. En esa misma fecha, la Sra. Leslie A. Santoni, gerente del Departamento de Recursos Humanos, les confirmó por escrito que la reunión se iba a celebrar el 15 de marzo de 2006 y que en la misma estarían presentes el personal gerencial y los empleados del área de banquetes.

En efecto la reunión solicitada se efectuó en la fecha pautada. Sin embargo, el señor González Sotomayor no pudo comparecer porque ese mismo día fue despedido de su empleo. A esta reunión asistieron gerenciales y empleados no exentos para un total de 11 personas, entre las cuales se encontraban: Raymond Betances López, el otro empleado que junto al señor González Sotomayor solicitó la reunión; Iván Seda; Alfredo Rodríguez; Rosa Estrella; Carmen Aponte; Edwin Rivera; Mike Kranz; Carlos Irizarry; Louis B. Muñoz,

gerente; José Graniela, supervisor del señor González Sotomayor; y Leslie A. Santoni.

En esta reunión, sobre la cual el personal del Departamento de Recursos Humanos del Hotel escribió una minuta, se plantearon sólo dos asuntos: (1) el señor Betances López cuestionó la distribución equitativa del trabajo, a pesar de que él tenía más años de servicios en el hotel que los empleados nuevos; (2) la señora Estrella, además de unirse a la inquietud del empleado Betances López, añadió que se sentía incómoda por el incidente de un robo de una cartera, donde la señora afectada alegadamente la había inculpado a ella. **Estos planteamientos o quejas se hicieron de forma individual y con el único interés de velar y proteger el interés particular de los exponentes.**[2]

Respecto al primer punto, el señor Muñoz expresó que inicialmente para la distribución del trabajo se consideraba el "seniority" del empleado, pero que dio instrucciones de cambiar ese procedimiento a una repartición equitativa del trabajo para impedir el tiempo extra y evitar la pérdida de meseros por falta de trabajo. En cuanto al segundo asunto, le clarificó a la señora Estrella que si nadie la había acusado no tenía porque preocuparse. **Tanto el señor Betances López como la señora Estrella mostraron entendimiento sobre las justificaciones que expresó la gerencia en cuanto a sus inquietudes. Los**

---

[2]Apéndice III del Recurso de *Certiorari* ante el Tribunal Apelativo, Minuta de Reunión, 15 de marzo de 2006, pág. 3.

**demás empleados comentaron que se sentían a gusto en el
hotel y que venían a trabajar.**[3]

El 13 de junio de 2006, el señor González Sotomayor
presentó una querella contra el Mayagüez Resort & Casino
bajo el procedimiento sumario que dispone la Ley Núm. 2 del
17 de octubre de 1961. Su reclamo estuvo fundamentado en
la Ley Núm. 80 de 30 de mayo de 1976, según enmendada,
conocida como Ley de Despido Injustificado, la Ley Núm. 115
del 20 de diciembre de 1991, conocida como Ley de
Represalias y en el Artículo II, Secciones 16-18 de nuestra
Constitución. Entre las alegaciones pertinentes del señor
González Sotomayor se encuentran que el Mayagüez Resort &
Casino lo despidió **por hacer "uso válido de su derecho
constitucional de participar en actividades concertadas y
reclamar derechos que como empleado le corresponden"**[4],
porque **entendía** que él estaba "tratando de organizar a los
empleados de su departamento"[5] y porque "solicitó una
reunión con la gerencia **para discutir sus condiciones de
trabajo".**[6] Por último, indicó que **"no era la primera vez que
reclamaba derechos que como empleado le correspondían"** y
que por su despido injustificado el hotel tenía que
indemnizarle la cantidad de $13,510.00.[7]

---

[3] *Íd*, págs. 3-4.
[4] Apéndice III del recurso de *certiorari* presentado ante
este Tribunal, Querella Enmendada, 13 de junio de 2006,
pág. 9. (Énfasis nuestro).
[5] *Íd*, pág. 9.
[6] *Íd*, pág. 9. (Énfasis nuestro).
[7] *Íd.*, pág. 10. (Énfasis nuestro). No obstante, en un
fragmento de la deposición tomada al señor González
Sotomayor, éste expresó que su despido estaba relacionado

Por su parte, el patrono Mayagüez Resort & Casino contestó la querella el 22 de junio de 2006, planteando en esencia que el señor González Sotomayor había sido despedido justificadamente conforme a la normativa esbozada en la Ley Núm. 80 de 1976, según enmendada, y no tenía causa de acción bajo la Ley Núm. 115 de 1991. En concreto, el hotel alegó que "el señor González Sotomayor había sido despedido por un incidente acontecido el 11 de marzo de 2006 y en virtud de su historial disciplinario anterior".[8]

Respecto al incidente del 11 de marzo de 2006, Mayagüez Resort & Casino expuso que el señor González Sotomayor, en una actividad en la que trabajó como mozo, omitió realizar los procedimientos de caja con relación a unas botellas de vino servidas a unos clientes durante la

---

con un mal funcionamiento que realizó, mientras trabajaba como mesero en una actividad de tríos realizada por el hotel. En específico, en la deposición el señor González Sotomayor manifestó lo siguiente:

Lcdo. Lugo: ¿Cómo fuiste despedido?

Deponente: **Pues, fui despedido porque hice… Por un mal funcionamiento que hice.**

Lcdo. Lugo: ¿Específicamente qué?

Deponente: **Que no abrí un cheque [o una cuenta] del cliente. O sea, le pedí al "bartender" que me despachara una bebida y que supuestamente no había abierto el cheque.** Apéndice VII, Solicitud de Desestimación de la Querella y Réplica a Memorando de Derecho sometida por Mayagüez Resort & Casino, la cual estuvo acompañada de un fragmento de la deposición que el hotel le tomó al señor González Sotomayor, 16 de marzo de 2007, págs. 53-54.

[8] Apéndice IV, Contestación a la Querella, 22 de junio de 2006, pág. 13. Véase, además, Apéndice VII, *op.cit.*, pág. 40.

actividad.[9] Sobre las diversas acciones disciplinarias contra el señor González Sotomayor, el hotel enumeró las siguientes: "reiteradas omisiones en realizar sus ponches de entradas y salidas; negarse a asistir a su trabajo por razones injustificadas", razón por la que fue suspendido de empleo y sueldo; actitudes negativas reiteradas contra "supervisores y compañeros de trabajo" lo que resultó en su suspensión de empleo y sueldo; y actitudes agresivas o negativas.[10]

Enfáticamente, Mayagüez Resort & Casino alega que **el despido del señor González Sotomayor no estuvo relacionado con la reunión que éste solicitó ni con ninguna de sus alegaciones incluidas en la querella.**[11] Plantea que el despido obedeció a razones justificadas en coherencia con las disposiciones de la Ley Núm. 80 de 1976, según enmendada.[12] Es decir, que **"la terminación del empleo del señor González Sotomayor estuvo motivada exclusivamente por el buen y normal funcionamiento de la empresa."**[13] Finalmente, el hotel alegó que el Tribunal de Primera Instancia no tenía jurisdicción para atender esta controversia porque el uso por el señor González Sotomayor de la palabra actividades concertadas en la querella, en

---

[9] *Íd.*, pág. 17.
[10] *Íd.*
[11] *Íd.*, pág. 18.
[12] *Íd.*
[13] *Íd.*, pág. 22. (Énfasis nuestro). También, Mayagüez Resort & Casino alegó que el despido del señor González Sotomayor estuvo relacionado a que "éste no rindió su trabajo en forma eficiente y adecuada conforme a las normas y reglamentos del patrono." *Íd.*, pág. 25.

referencia a la causa de su despido, es una materia protegida por la Ley Taft-Harley cuya jurisdicción exclusiva recae en la NLRB.[14]

El 8 de febrero de 2007, el señor González Sotomayor presentó ante el foro de instancia un "Memorando de Derecho" donde recalca y fundamenta sus reclamaciones laborales al amparo de la Ley Núm. 80 de 1976, según enmendada, y la Ley Núm. 115 de 1991. Mientras, el 16 de marzo de 2007, Mayagüez Resort & Casino sometió una "Solicitud de Desestimación de la Querella y Réplica a Memorando de Derecho".[15] Luego de evaluar la moción de

---

[14] *Íd.*, pág. 23. Véase, además, Apéndice VII, *op.cit.*, pág. 47.

[15] Mayagüez Resort expresó en su petición de *certiorari* que la moción presentada ante el Tribunal de Primera Instancia estuvo sustentada en la Regla 10.3 de Procedimiento Civil, 32 L.P.R.A. Ap.III R-10.3, es decir, era una Moción para que se dicte sentencia por las alegaciones. En ésta expuso que en este caso no estaban presentes los requisitos necesarios para que se activara la protección laboral que concede la Ley Núm. 115 de 1991 y que el Tribunal de Primera Instancia no tenía jurisdicción para atender la controversia porque las alegaciones que el señor González Sotomayor plantea en su querella constituyen violaciones de derechos y protecciones que emanan de la Ley Taft-Harley, cuya jurisdicción le compete exclusivamente a la NLRB. En otras palabras, sustentó su moción en la defensa de que el señor González Sotomayor no expuso una reclamación que justificara la concesión de un remedio y en falta de jurisdicción sobre la materia. Ambas defensas pudieron ser sometidas mediante una moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, siempre que ésta se hubiera presentado antes de alegar. 32 L.P.R.A. Ap.III R-10.2. No obstante, como Mayagüez Resort sometió la moción luego de contestar la querella, la única opción para levantar ambas defensas, antes del juicio, era la moción bajo la Regla 10.3 de Procedimiento Civil, supra. Regla 10.8 de Procedimiento Civil, 32 L.P.R.A. Ap.III R-10.8. Esto porque la moción para que se dicte sentencia por las alegaciones requiere que se hayan presentado todas las alegaciones antes de que se someta la misma. 32 L.P.R.A. Ap.III R-10.3.

Al evaluar este tipo de moción, hemos resuelto que sólo se podrá dictar sentencia por las alegaciones **si no existen hechos materiales en controversia y el promovente tiene razón como cuestión de derecho**. Cía de Desarrollo Comer. v. American Fruits, 104 D.P.R. 90, 94 (1975); Rivera v. Otero de Jové, 99 D.P.R. 189, 195 (1970). Además, hemos establecido que ante una moción bajo la Regla 10.3 de Procedimiento Civil el foro judicial debe estimar admitidos por la parte demandada, cuando ésta solicita que se dicte sentencia por las alegaciones, todos los hechos bien alegados en la demanda y las inferencias que puedan hacerse de las mismas. Montañez v. Hosp. Metropolitano, 157 D.P.R. 96, 105 (2002); Rivera v. Otero de Jové, *supra*, pág. 195. Sólo "se desestimará la acción si el promovente no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar en juicio." Montañez v. Hosp. Metropolitano, *supra*.

Un dato importante es que la moción sometida por Mayagüez Resort estaba acompañada de un documento. Específicamente, el hotel incluyó una porción de una deposición tomada al señor González Sotomayor para justificar o validar su alegación de que el despido de éste fue por una cuestión puramente disciplinaria. Apéndice VII, *op.cit.*, págs. 53-55. La Regla 10.3 de Procedimiento Civil, *supra*, posibilita el que una moción para que se dicte sentencia por las alegaciones se convierta en una moción de sentencia sumaria si viene acompañada de documentación para sustanciar lo argumentado.

Ante este tipo de moción el foro judicial tiene la responsabilidad de analizar los documentos que acompañan la solicitud de sentencia sumaria, los de la oposición, si se presentaron, y todos los otros documentos que obren en el expediente. A base de esto, el tribunal debe determinar si algún hecho material quedó controvertido por el oponente de la moción y si alguna alegación de la demanda no ha sido refutada o controvertida en forma alguna por los documentos. Analizados todos estos criterios, el tribunal **no dictará sentencia sumaria cuando** (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) **surge de los propios documentos que acompañan la moción una controversia real sobre algún hecho material o esencial, o como cuestión de derecho no procede.** Vera v. Dr. Bravo, 161 D.P.R. 308, 333-334 (2004); PFZ Properties v. General Accident Insurance Co., 136 D.P.R. 881, 913-914 (1994). En este proceso de análisis, el tribunal tiene que analizar los hechos de la forma más favorable a la parte que se opone a ella y emitirá sentencia a favor de la parte a la cual le asiste el derecho. Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R 508, 526 (1998). **Cualquier duda sobre la existencia de una controversia sobre los hechos medulares**

desestimación presentada por el hotel, el foro de instancia

declaró no ha lugar la misma, el 23 de abril de 2007,

porque entendió que existían "hechos medulares en

controversia". Ante este dictamen, Mayagüez Resort & Casino

sometió un recurso de *certiorari* ante el Tribunal de

Apelaciones. Este foro judicial confirmó al tribunal de

---

**del caso deberá resolverse contra la parte que la solicita**. Rosario v. Nationwide Mutual, 158 D.P.R. 775, 780 (2003); Asoc. Pesc. Pta. Figueroas v. Pto del Rey, 155 D.P.R. 906, 924 (2001); García Rivera et. al. v. Enríquez, 153 D.P.R. 323, 338 (2001). En definitiva, la sentencia sumaria sólo debe dictarse en casos claros, donde no se planteen controversias de interés público, se cuestione la credibilidad, existan elementos subjetivos de intención, propósitos mentales o negligencia. Jusino et. als. v. Walgreens, 155 D.P.R. 560, 578 (2001); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 301 (1994); Consejo de Titulares v. M.G.I.C. Financial, 128 D.P.R. 538, 549 (1991); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721 (1986).

El tribunal de instancia pudo considerar la moción presentada por Mayagüez Resort como una para dictar sentencia por las alegaciones o quizás, debido al documento incluido, pudo pensar que realmente se trataba de una moción de sentencia sumaria. Similar consideración pudo haber realizado el tribunal apelativo. La distinción entre ambas mociones es que la primera "únicamente procede cuando no hay hechos en controversia en las alegaciones"; mientras, la segunda "procede aun cuando de las alegaciones existan hechos en controversia, si la parte que la promueve puede demostrar, que aun cuando de las alegaciones surja una aparente controversia, en el fondo, penetrando hasta la sustancia probatoria, esa controversia no existe." R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, LexisNexis de Puerto Rico, Inc., San Juan, Puerto Rico, 2007, pág. 237. No importa cuál fue la moción considerada por los tribunales, el resultado sería el mismo. Es decir, se tenía que denegar la moción porque las defensas en derecho presentadas por Mayagüez Resort eran improcedentes. El foro judicial tiene jurisdicción sobre esta controversia y existe un remedio en ley para la reclamación del señor González Sotomayor. El fundamento para este análisis será discutido en la parte II de esta opinión.

instancia, el 11 de julio de 2007, por entender que actuó correctamente al negarse a desestimar la querella.

Inconforme con este dictamen, el hotel recurrió ante este Tribunal argumentando que el foro apelativo cometió un error al no desestimar la demanda, a pesar de que el Tribunal de Instancia no tenía jurisdicción para entender en la controversia y porque de las alegaciones de la demanda no surgen los requisitos necesarios para que se active una reclamación sustentada en la Ley Núm. 115 de 1991. Por su parte, el señor González Sotomayor sometió un alegato, en el cual justificó la jurisdicción del Tribunal de Primera Instancia, expresando, entre otras cosas, lo siguiente:

> El hecho de que el querellante hiciera mención en su querella del término "actividades concertadas" para identificar los hechos que dieran base a su despido, no deja al TPI sin jurisdicción. La jurisdicción del TPI o la ausencia de la misma, está enmarcada en los hechos mismos y no en la frase correcta o incorrecta utilizada por el querellante.[16]

Sobre el segundo error señalado, el señor González Sotomayor expone, apoyándose en el caso Cintrón Díaz v. Ritz Carlton, 2004 T.S.P.R. 62, que se configura el acto de represalia cuando un patrono procede a despedir a un empleado por éste pedir reunirse con la gerencia para discutir asuntos concernientes a su trabajo.

La Opinión Mayoritaria sólo se concentra en resolver qué foro, si el tribunal de instancia o la NLRB, tiene la

---

[16] Alegato del señor González Sotomayor, 22 febrero de 2008, pág. 3. (Énfasis nuestro).

jurisdicción exclusiva para resolver la controversia de este caso. Luego de una breve exposición del derecho aplicable y la discusión de figuras poco significativas en cuanto a la médula de la controversia, la Opinión Mayoritaria concluye que la NLRB es el foro con jurisdicción exclusiva para atender este caso, por lo cual procede a desestimar la querella por falta de jurisdicción. No podemos coincidir con ese resultado y mucho menos suscribirlo ante la ausencia de fundamentos y análisis que lo apoyen.

## II.

**A. Actividades Concertadas en el Ámbito de las Relaciones Obrero Patronales**

La frase actividades concertadas se utilizó por primera vez en la Ley Norris La Guardia aprobada el 23 de marzo de 1932.[17] Esta legislación laboral tiene la finalidad

---

[17] Véase 29 U.S.C. sec. 102. Sobre el particular, el Tribunal Supremo Federal expresó:

"Congress modeled the language of § 7 after that found in § 2 of the Norris-La Guardia Act… which declares that it is the public policy of the United States that 'workers shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of …representatives or in self organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection…"; Eastex, Inc. v. N.L.R.B., 437 U.S. 556, 565 (nota 14) (1978); Meyers Industries Inc., I, 268 N.L.R.B. 493 (1984). También, véase, B. Glenn George, "Divided We Stand: Concerted Activity and the Maturing of the NLRA", 56 Geo. Wash. L. Rev. 509, 521 (Marzo, 1988), donde se mencionó lo siguiente:

Several commentators offer extensive analyses of section 7's legislative history in efforts to ferret out the true intent of the "concerted activities" language. This critical terminology

de prohibirle a los tribunales federales que emitan órdenes de injunctions en aquellas controversias relacionadas con disputas laborales pacíficas. Además, mediante esta ley, el Congreso rechazó que se incluyeran en cualquier tipo de contrato, disposiciones que previnieran al empleado de organizarse en un sindicato o le exigieran desafiliarse del mismo.[18] Respecto a las actividades concertadas, el texto de la Ley dispone:

> Whereas under prevailing economic conditions,…the individual unorganized worker is commonly helpless to exercise actually liberty of contract and to protect his freedom of labor, … it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of **such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aids or protection.**[19]

Posteriormente, como parte de la "Revolución del Nuevo Trato", la administración del Presidente Franklin D. Roosevelt aprobó la National Industrial Recovery Act (NIRA) en 1933. Ésta incluía una política pública nacional laboral

---

> was taken from an equivalent provision in the NLRA's predecessor, the National Industrial Recovery Act. The National Industrial Recovery Act, in turn, adopted the language from Norris-La Guardia Act, passed in 1932 to prohibit federal court injunctions in "labor disputes".

[18] 29 USC sec. 103. Esto es lo que se conoce como los "yellow dog contract". Para mayor detalle sobre esta legislación puede examinar: A. Cox, D. Curtis Box, R. A. Gorman y M.W. Finkin, Labor Law: Cases and Materiales, 3ra Edición, New York, 2001, págs. 49-54.
[19] 29 U.S.C. sec. 102. (Énfasis Suplido).

que favorecía la organización sindical y la negociación colectiva.[20] Como parte de esta política, se incluyó en la sección 7 (a) el concepto actividades concertadas, según aprobado en la Ley Norris la Guardia. Los derechos y principios contenidos en este estatuto fueron implantados por la Junta Nacional Laboral, organismo creado por esta ley.

La NIRA, sin embargo, fue declarada inconstitucional el 27 de mayo de 1935.[21] No obstante, su lenguaje sobre actividades concertadas fue utilizado en la sección 7 de la Ley Nacional de Relaciones Laborales del 5 de julio de 1935, mejor conocida como Ley Wagner. Dicho estatuto laboral fomenta la práctica de la negociación colectiva y la absoluta libertad de asociación de los empleados para mejorar sus condiciones de empleo y salario e impulsar el libre intercambio de bienes en el comercio interestatal. Ésta garantiza el derecho de los trabajadores a organizarse, escoger sus representantes, negociar colectivamente y celebrar huelgas y piquetes pacíficos. Además, la misma crea la Junta Nacional de Relaciones del Trabajo para su administración.[22]

---

[20] Demetrio Fernández y Celina Romany, Derecho Laboral: Casos y Materiales, Tomo 1, Editorial de la Universidad de Puerto Rico, Río Piedras, Puerto Rico, 1987, pág. 32; Charles Zeno Santiago y Victor M. Bermúdez Pérez, Tratado de Derecho del Trabajo, Tomo I, Publicaciones JTS, San Juan, Puerto Rico, pág. 20.
[21] Schechter Poultry v. U.S., 295 U.S. 495 (1935).
[22] 29 U.S.C. secs. 151, 153; E. López Ruyol, El ABC del Movimiento Obrero, Instituto Técnico Sindical, Inc., Carolina, Puerto Rico, 1998, págs. 183-184; Demetrio

La Ley Wagner fue enmendada por la Ley Federal de Relaciones Obrero Patronales del 23 de junio de 1947, conocida como la Ley Taft-Harley. Su política pública laboral está orientada a eliminar las causas de ciertas obstrucciones sustanciales al libre flujo del comercio interestatal, a través de fomentar la práctica y procedimientos de la negociación colectiva y proteger el ejercicio de los obreros de su derecho a asociación, a organizarse entre sí, a la elección y designación de sus representantes para negociar los términos y condiciones de su empleo y a realizar otras formas de ayuda mutua y protección.[23]

En esta legislación sobrevivió el lenguaje sobre las actividades concertadas de la sección 7 de la Ley Wagner. A esos efectos, el estatuto establece:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage **in other concerted activities for the purpose of collective bargaining or other mutual aid or protection**, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title.[24]

---

Fernández y Celina Romany, op.cit., pág. 33; Charles Zeno Santiago y Victor M. Bermúdez Pérez, op.cit.

[23] 29 U.S.C. sec. 151; U.S. Congressional Record Senate 80, Section 1, 1947: Analysis of Title I of H.R. 3020, Taft-Harley Bill by Senator Murray 6501; Véase, además, A. Cox, D. Curtis Box, R. A. Gorman y M.W. Finkin, op.cit., págs. 87-92.

[24] 29 U.S.C. sec. 157.

Lo único diferente entre esta disposición y la contenida en la Ley Wagner es que incorporó el derecho de los trabajadores de no participar en las actividades concertadas, si esa era su voluntad, sin temor a represalias.[25]

La violación por parte del patrono de algunos de los derechos establecidos en la sección 157 de la Ley Taft-Harley se considera como una práctica ilícita y corresponde a la Junta Nacional de Relaciones del Trabajo la jurisdicción exclusiva para atender controversias relacionadas con éstas.[26] Esto, siempre que exista un contexto de disputa obrera, el cual según la Ley Taft-Harley sólo se suscita cuando la controversia está relacionada con los términos, la tenencia o condiciones de empleo, o en relación con la asociación o representación de personas en la negociación, fijación, mantenimiento, cambio o esfuerzo para convenir términos o condiciones de empleo, independientemente de si la relación inmediata de los disputadores es la de patrono y empleado.[27] Sobre este particular, hemos establecido que **"lo imprescindible para determinar si una controversia constituye o no una disputa**

---

[25] *Íd.*, Véase, además, C. F. Rosado Marzán, "Derecho Laboral y Organización Sindical en Puerto Rico", 68_1RCAPR 124 ___, 1 de enero de 2007.
[26] 29 U.S.C. secs. 158 (a) (1) (b) (1), 160 (a).
[27] 29 U.S.C. sec. 152(9).

**obrero patronal, no es quién plantea el asunto, sino de donde surgen los derechos reclamados…".**[28]

El término actividades concertadas no ha sido definido en las leyes laborales mencionadas.[29] La NLRB y los tribunales se han encargado de establecer los requisitos particulares que deben estar presentes para que una disputa laboral pueda considerarse una actividad concertada.[30] A continuación, examinemos nuestra jurisprudencia y la del Tribunal Supremo federal sobre esto.

En 1964 este Tribunal resolvió el caso J.R.T. v. Morales[31], en el cual un patrono despidió a dos empleados por presentar una querella en el Departamento del Trabajo de Guayama, a su nombre y en representación de otros compañeros, por concepto de horas extras, trabajo realizado

---

[28] Plan de Salud v. A.A.A., 169 D.P.R. _____ (2006); 2006 T.S.P.R. 178, 2006 J.T.S. 186.

[29] No obstante, las formas más conocidas en que se manifiestan las actividades concertadas son: las huelgas, los piquetes, las huelgas de brazos caídos, los "sitdown", los boicots, la resistencia a cruzar una línea de piquete, la presentación conjunta de querellas y otras interrupciones del trabajo. Éstas se realizan para lograr: (1) el reconocimiento del sindicato; (2) el adelanto de demandas económicas en la mesa de negociación; (3) la protesta contra una práctica ilícita del patrono; (4) protestar sobre condiciones de trabajo cuestionables; (5) presionar en simpatía de otra unión fraterna que enfrente un conflicto laboral. Ante las acciones concertadas el patrono utiliza los despidos, los reemplazos, la subcontratación, los aumentos de sueldos selectivos, incentivos a los empleados que no participan de la huelga, todo tipo de comunicaciones para divulgar la controversia y el cierre patronal. L. M. Dyal, Jr., Strikes and Other Concerted Activity. New York: Practising Law Institute, 1973, pág. 45.

[30] M. C. Harper, S. Estreicher, J. Flynn, Labor Law: Cases, Materials, and Problems, 6th ed., Aspen Publishers, 2007, pág. 207.

[31] 89 D.P.R. 777 (1964).

en el séptimo día y diferencias en salarios. Esta querella fue archivada, por un lado, porque el patrono evidenció que había pagado los séptimos días trabajados y, por otro lado, porque los empleados no aportaron prueba respecto al reclamo de horas extras. Posteriormente, el Sindicato de Obreros Unidos del Sur presentó en la Junta de Relaciones del Trabajo de Puerto Rico un cargo por práctica ilícita contra el patrono por haber éste despedido a los empleados por su participación en actividades concertadas.

La Junta favoreció a los empleados y ordenó que se les repusiera y se les compensaran los salarios dejados de devengar más los intereses correspondientes. No obstante, revocamos a la Junta porque entendimos que no se le puede imputar una práctica ilícita del trabajo, bajo la sección 8(1)(a) de la Ley Núm. 130 de 1945, conocida como Ley de Relaciones del Trabajo de Puerto Rico, a un patrono que actúa en forma discriminatoria contra unos empleados, **cuando éste no tenía conocimiento de las actividades concertadas realizadas por los obreros ni podía inferir su existencia de las circunstancias o de la situación prevaleciente en el lugar de trabajo.**[32] Además, aclaramos que una actividad concertada no está limitada al ámbito de la negociación colectiva y que ésta sólo está protegida si no constituye un acto: (1) ilegal; (2) violento; (3) en violación del convenio; (4) indefendible por constituir una deslealtad al patrono que es innecesaria para realizar

---

[32] J.R.T. v. Morales, *Íd.*, págs. 783-784.

actividades concertadas legítimas: (a) que consista de imputaciones incorrectas hechas deliberadamente o (b) con intención de falsificar o (c) maliciosamente perjudicar al patrono, o (d) difamatorias, (e) insultantes o (f) manifiestamente destructivas de la disciplina.[33]

Más adelante, en J.R.T. v. Escuela Coop. E. M. de Hostos[34], resolvimos que no constituye una actividad concertada la huelga que 28 maestros de la Cooperativa realizaron en protesta por el despido de la directora del plantel escolar. Resaltamos que la misma directora había presentado su renuncia ante la Junta de Directores del Plantel; éstos la aceptaron y, posteriormente, se negaron a aceptar que la directora la retirara. Entendimos, igual que la Junta, que **la huelga carecía de toda legitimidad gremial porque fue un movimiento aislado y desvinculado de las actividades concertadas encaminadas a organizar una unión independiente.**[35]

En otras palabras, **no existía un nexo claro entre la gestión sindical para mejorar las condiciones de trabajo y el paro dirigido a cuestionar la prerrogativa gerencial de la Junta de Directores del patrono al escoger sus**

---

[33] J.R.T. v. Morales, *Íd.*, págs. 779-780.

[34] 107 D.P.R. 151 (1978). Este caso ocurre en un contexto de organización sindical. Es decir, antes del paro y el despido, los maestros se reunieron con dos líderes sindicales para discutir los procedimientos de formar una unión, acordaron organizarse bajo el nombre de Unión de Educadores de la Escuela Cooperativa Eugenio María de Hostos, eligieron una directiva, tomaron firmas entre los maestros y radicaron una petición de representación ante la JRT.

[35] J.R.T. v. Escuela Coop. E. M. de Hostos, *Íd.*, pág. 160.

**supervisores e imponer su criterio al seleccionar un director de escuela**. En ese sentido, la huelga era ilegal y vulnerable del requerimiento a los empleados de sus obligaciones contractuales. Por lo tanto, el patrono al despedir no violó la sección 7 de la Ley, ni cometió una práctica ilícita de trabajo.[36]

Más recientemente, en 1992, resolvimos el caso de P.R.T.C. v. Unión Indep. Emp. Telefónicos[37]. La controversia en este caso se orientaba a determinar si era válida una norma del patrono (P.R.T.C.) que, en medio de la negociación del nuevo convenio colectivo, prohibía a sus empleados que tenían contacto con el público colocar en sus uniformes el mensaje "Convenio Colectivo Ahora". Esta norma sobre el uso de uniformes y sus leyendas o insignias fue aprobada por el patrono cuando venció el convenio vigente y antes de que se firmara el nuevo. La unión, por su parte, estaba usando las leyendas para presionar al patrono a que firmara el convenio. Además de esta iniciativa, la unión había desarrollado otras actividades concertadas, como piquetes, marchas, conferencias de prensa y otras comparecencias públicas. Varios de los empleados fueron suspendidos por incumplir la norma sobre las leyendas.

La unión presentó ante el tribunal de instancia una demanda de *injunction*, sentencia declaratoria y daños

---

[36] *J.R.T. v. Escuela Coop. E. M. de Hostos*, *Íd*., págs., 160-161
[37] 131 DPR 171 (1992).

contra el patrono, aduciendo que la prohibición constituía censura previa y supresión total al derecho de expresión. De igual forma, presentó cargos de práctica ilícita de trabajo, ante la Junta de Relaciones del Trabajo, fundamentados en el Art. 8 (1) (a) y (c) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 69 (a) y (c). La unión alegó que la prohibición del patrono coartaba el derecho de los empleados a realizar actividades concertadas de forma ordenada, pacífica y sin alusiones de deslealtad o lenguaje soez o belicoso al amparo del Art. 4 de la Ley de Relaciones del trabajo de Puerto Rico, 29 L.P.R.A. sec. 65. La Junta emitió una decisión y orden instruyendo al patrono a cesar y desistir de interferir con los derechos garantizados por la Ley, específicamente el de realizar actividades concertadas para negociar colectivamente u otro fin de ayuda o protección mutua. También le ordenó pagar los salarios que los empleados dejaron de percibir.

Al evaluar los hechos del caso, entendimos que el uso de leyendas era una acción concertada, para propósitos de ayuda mutua o protección de los empleados, protegida por la Ley de Relaciones del Trabajo, con independencia de que con su acción los obreros ejercieran, además, su derecho constitucional a la libre expresión de ideas.[38] Llegamos a esta conclusión porque la actividad concertada realizada se

---

[38] P.R.T.C. v. Unión Indep. Emp. Telefónicos, *Íd.*, pág. 189; Art. II, secs. 4 y 6, Const. E.L.A., 1 L.P.R.A. secs. 4 y 5; J.R.T. v. Morales, *supra*, págs. 779-780.

caracterizó por: (**1) estar relacionada con los términos y condiciones de empleo que se estaban negociando; (2) realizarse para buscar el apoyo de todos los unionados; (3) tener el propósito de buscar el apoyo del público; (4) crear presión psicológica contra el patrono; (5) buscar un remedio específico; (6) tener un propósito legal; y (7) utilizar medios legales para su consecución.**[39] También, en esa ocasión expresamos que contrario a la jurisdicción federal, **en Puerto Rico la protección de las actividades concertadas tiene raíces constitucionales.**[40]

Ahora examinemos el análisis que ha realizado el Tribunal Supremo de Estados Unidos sobre la figura actividades concertadas. Este es, evidentemente, un referente altamente persuasivo.

En N.L.R.B. v. Washington Aluminum Co.[41] unos empleados abandonaron su trabajo sin permiso porque estaba muy frío para trabajar en el taller para construcción de herramientas de Washington Aluminum Co. en Baltimore. En ocasiones anteriores, los empleados se habían quejado de las condiciones en que estaban realizando su labor. El día de los hechos, el 5 de enero, la calefacción del lugar se había dañado y la temperatura de invierno bajó

---

[39] P.R.T.C. v. Unión Indep. Emp. Telefónicos, *supra*, págs. 189-190.

[40] Art. II, secs. 17 y 18, Const. E.L.A, 1 L.P.R.A. secs. 17-18.

[41] 370 U.S. 9 (1962). El contexto donde ocurren estos hechos es uno en el que existe una campaña de elecciones sindicales en la compañía, pero la unión no había sido certificada por la Junta Nacional y no existía un convenio colectivo.

extraordinariamente.[42]   El patrono despidió a los empleados por su acción.

La NLRB determinó que la conducta de los empleados estaba protegida como actividad concertada bajo la sección 7 de la Ley Nacional de Relaciones Laborales y que el despido era una práctica ilícita bajo la sección 8 (a) (1) de la Ley. También, la NLRB concluyó **que la acción concertada en este caso nació de una disputa laboral, donde los empleados protestaban porque la compañía no les suplía una calefacción adecuada en su lugar de trabajo.**[43]

El Tribunal Supremo federal concluyó que los empleados no tenían que hacer una demanda específica a su patrono, antes de marcharse, para que la acción estuviera cobijada por la sección 7, máxime cuando no tenían un representante exclusivo seleccionado.[44] La determinación del máximo foro federal se basó en que el lenguaje de la sección 7 es tan amplio que considera **como actividades concertadas aquella que ocurra antes, después o en el mismo**

---

[42] N.L.R.B. v. Washington Aluminum Co., *Íd.*, pág. 11.
[43] N.L.R.B. v. Washington Aluminum Co., *Íd.*, pág. 12.
[44] En concreto, el Tribunal Supremo federal menciona:

The seven employees here were part of a small group of employees who were wholly unorganized. They had no bargaining representatives and, in fact, no representative of any kind to present their grievances to their employer. Under these circumstances, they had to speak for themselves as best they could… **The bitter cold of January 5, however, finally brought these workers' individual complaints into concert so that some more affective action could be considered…** N.L.R.B. v. Washington Aluminum Co., *Íd.*, págs. 14-15.

**momento en que se origina la queja, demanda o exigencia de los trabajadores.** Por esta razón, ordenó que los trabajadores fueran restituidos en su trabajo.[45]

No obstante, el Tribunal hace constar que **las actividades concertadas, para estar protegidas por la sección 7, no pueden ser ilegales, violentas, incumplir el contrato, indefendibles por considerarse desleales al patrono e innecesarias para realizar las mismas.**[46] También, aclara que no toda actividad que perjudique al patrono pierde la protección de la sección 7.

En 1978[47], en un contexto de relaciones laborales colectivas, es decir, bajo la existencia de un sindicato y relaciones laborales normadas por un convenio colectivo, el Tribunal Supremo federal resolvió que un patrono cometía una práctica ilícita al no permitir la distribución de un periódico de la unión en las áreas donde no se ejecutaba el trabajo y en las horas libres de los empleados. En concreto, en el periódico se le pedía a los trabajadores que apoyaran dos asuntos de su interés y de preocupación para su unión y, además, discutieran una propuesta para: (1) la incorporación de la ley de "derecho a trabajar" en la Constitución y (2) un veto presidencial al aumento del salario mínimo federal.

Luego de evaluar los hechos del caso, el Tribunal determinó que la distribución del periódico era una acción

---

[45] N.L.R.B. v. Washington Aluminum Co., *Íd.*, pág. 14.
[46] N.L.R.B. v. Washington Aluminum Co., *Íd.*, pág. 17.
[47] Eastex, Inc. v. N.L.R.B., 437 U.S. 556 (1978).

concertada, para fines de "ayuda mutua y protección", protegida por las secciones 7 y 8 (a) (1) de la Ley Taft-Harley. Según el Tribunal, la preocupación de la unión por la legislación analizada en el periódico tenía la intención de proteger los intereses de sus miembros dentro del concepto de "ayuda mutua y protección" y los temas discutidos en el periódico podrían tener un impacto significativo en la fuerza de la unión durante las negociaciones, específicamente en los niveles de salarios negociados con el patrono. En fin, el Tribunal decidió que los empleados no pierden la protección de la Ley Taft-Harley aunque utilicen canales que están fuera de la relación obrero-patronal inmediata, como lo era el periódico en este caso, **siempre y cuando éstos estén tratando de mejorar los términos y condiciones de empleo o de incrementar sus beneficios como empleados.** En otras palabras, se reconoció que los empleados pueden utilizar medios no tradicionales para avanzar aquellas causas, no relacionadas con la negociación colectiva y los procedimientos de quejas y agravios, presentes en el contexto de su trabajo. Esto debido a que la política pública de la Ley Taft-Harley está dirigida a "protect the right of workers to act together to better their working conditions".[48]

---

[48] Eastex, Inc. v. N.L.R.B., *Íd.*, pág. 567, citando el caso N.L.R.B. v. Washington Aluminium Co., *supra*, pág. 14.

Bajo la temática de acción individual de un empleado, en 1975[49], el Tribunal Supremo federal resolvió que un patrono comete una práctica ilícita de trabajo, según la sección 8(a) (1) de la Ley Taft-Harley, si impide que un representante sindical esté presente en una entrevista investigativa. Sin embargo, el Tribunal Supremo aclaró que esta norma no aplica en cualquier tipo de conversación que pueda tener el patrono con el empleado, sino aquella que tenga la potencialidad de una acción disciplinaria en contra de una obrera. En ese caso, se le imputó a una empleada de cafetería el pagar menos dinero por la compra de su almuerzo.

La decisión estriba en que la participación del representante sindical le garantiza, tanto al empleado solicitante como al resto de la unidad apropiada, que la unión está vigilante de sus derechos de seguridad de empleo y está enfocada en protegerlos en contra de castigos abusivos por parte del patrono. **La premisa es que de la misma forma en que se interviene a favor de este empleado, también se hará para el resto de los miembros de la unidad apropiada que puedan enfrentar situaciones similares.**[50] Además, el Tribunal señaló que la ley Taft-Harley está designada para eliminar la inequidad entre el poder de negociación de empleados y patronos. En ese sentido, el requerirle a un empleado que participe solo en una

---

[49] NLRB v. F. Weingarden, Inc., 420 U.S. 251 (1975).
[50] NLRB v. F. Weingarden, Inc., *Íd.*, págs. 260-261, mencionando el caso Houston Contractors Assn. v. NLRB, 386 U.S. 664, págs. 668-669 (1967).

entrevista investigativa que puede resultar en la imposición de cargos disciplinarios en su contra, lo que hace es perpetuar la inequidad que la Ley quiso eliminar.[51]

El caso de NLRB v. City Disposal System Inc.[52] también se ubica dentro del tópico de acciones individuales de empleados. Aquí un camionero fue despedido por negarse a conducir un camión que él entendía, honesta y razonablemente, que tenía los frenos defectuosos. El convenio que protegía al camionero garantizaba su derecho a rehusarse a conducir camiones que tuvieran desperfectos. Su unión no quiso representarlo y tuvo que recurrir solo a la NLRB para radicar, contra su patrono, una práctica ilícita por violación al Artículo XXI del convenio colectivo. La NLRB encontró que el despido fue injustificado y que el camionero había realizado una actividad concertada dentro de la definición de la Ley Nacional de Relaciones Laborales.

El Tribunal Supremo federal restituyó en su trabajo al camionero y dictaminó que se le pagaran los salarios dejados de percibir. En términos generales, coincidió con la NLRB en que un solo empleado que reclama un derecho protegido por un convenio colectivo puede efectuar una actividad concertada.[53] Esta conclusión se sostiene en dos

---

[51] NLRB v. F. Weingarden, Inc., *supra*, pág. 262, citando el caso American Ship Building Co. v. NLRB, 380 U.S. 300, 316 (1965).
[52] 465 U.S. 822 (1984).
[53] NLRB v. City Disposal System Inc., *Íd.,* págs. 829-837. El Tribunal Supremo federal fundamentó su determinación en la doctrina del caso Interboro Contractors, Inc., 157

justificaciones: (1) hacer valer un derecho contenido en un convenio es una extensión lógica de la acción concertada que produjo el contrato colectivo; y (2) hacer valer ese derecho afecta los derechos de todos los empleados cubiertos por el convenio colectivo. **Entendió el Tribunal que este efecto generalizado es suficiente para colocar las acciones individuales de un empleado dentro de la protección brindada por el estándar de ayuda mutua y protección, provisto por la sección 7.**[54]

El Tribunal Supremo federal reconoció que el término "actividades concertadas" se ha definido rutinariamente como todas las actividades de empleados en las que éstos se han unido con el propósito de lograr unas metas comunes.[55] No obstante, aclaró que la sección 7 no se limita a acciones donde dos o más empleados se unen en un mismo tiempo y lugar para lograr un propósito común. Respecto al apoyo a una organización laboral, estableció que un solo trabajador puede realizar esta acción y que tal actuación

---

N.L.R.B. 1295, 1298 (1966), puesto en vigor en 388 F. 2d 495 (CA2, 1967).

[54] Es importante mencionar que este aspecto del caso fue distinguido por la NLRB en Meyers Industries I, 268 N.L.R.B. 493 (1984) en el cual se encontró que cuando un grupo de empleados no está organizado y no existe un convenio colectivo, la afirmación de un derecho por un empleado, que sólo puede ser presumido que es de interés para el resto de los obreros, no se considera una acción concertada. Esta es la llamada interpretación literal del término actividad concertada que adopta la NLRB en Meyer Industries I, supra. Esta norma fue revocada con el caso NLRB v. City Disposal System Inc., supra.

[55] NLRB v. City Disposal System Inc., Íd., pág. 830, refiriéndose al caso Meyers Industries I, supra, págs. 493-495 para cuestionar la definición literal de actividad concertada que se elaboró por la NLRB en ese caso.

también es "concertada". Concretamente, **el acto de todos organizarse, irrespectivamente de cuando se realice, es decir, el acto de la asamblea y la posterior unión de otros empleados, es una acción integral y, por lo tanto, debe ser reconocida como una actividad concertada.** No tendría sentido formar un sindicato si otros empleados no pudieran unirse posteriormente. La acción de formar un sindicato es parte integral de la actividad de unirse al mismo, de la misma forma que la negociación de un convenio colectivo está integralmente relacionada a la invocación de un derecho provisto en el acuerdo. En ambos casos, ni la actividad colectiva, ni la individual estarían completas sin el acontecer de la otra.[56]

Un balance de la jurisprudencia revisada nos devela que las actividades concertadas, protegidas por la sección 7 de la Ley Taft-Harley, tienen que ser una expresión de voluntad de los trabajadores con el propósito de lograr unas metas comunes para mejorar sus condiciones de trabajo. Estas actividades se pueden realizar por uno o varios empleados, pues **lo importante es que la acción represente el interés del colectivo obrero.** El autor Francisco Velázquez lo resume muy bien al definir el concepto de

---

[56] Finalmente, el Tribunal Supremo federal reiteró que una actividad concertada puede perder la protección de la sección 7 si el empleado actúa con impunidad y realiza la actividad concertada de forma abusiva. Crown Central Petroleum Corp. v. N.L.R.B., 430 F. 2d 724, 729 (CA5, 1970), citado en NLRB v. City Disposal System Inc., *supra*, pág. 837. También, si las actividades tienen objetivos ilegales, representan acciones criminales o la conducta llevada a cabo representa o está en contravención de la normativa existente.

actividad concertada como los "esfuerzos combinados de los trabajadores con el propósito de defender sus intereses, reclamar sus derechos o de ayudar a otros trabajadores en sus demandas."[57]

## B. Criterios para Activar la Jurisdicción Exclusiva de la NLRB

Es importante señalar que para resolver la controversia que se encuentra ante la consideración de este Tribunal no es necesario expresarnos sobre la jurisdicción exclusiva de la NLRB. Si no existe una actividad concertada es fútil tal ejercicio jurídico. No obstante, como la Opinión Mayoritaria insiste en que el foro judicial no tiene jurisdicción en este caso, nos vemos precisados a clarificar cuándo es que se activa la jurisdicción exclusiva de la NLRB. Notamos entonces que, distinto a lo que plantea la mayoría, el desplazamiento jurisdiccional no es automático y el análisis de esta doctrina es mucho más complicado.

En el ámbito laboral, la doctrina de desplazamiento está fundamentada en la National Labor Relations Act (NLRA), legislación que se mantiene como el centro de la política laboral federal. Sin embargo, el Congreso no incluyó cláusulas expresas de desplazamiento en la NLRA.[58] Por esto, los tribunales han asumido la difícil tarea de

---

[57] F. Velázquez, Diccionario Laboral, Master Typesetting of P.R., Inc., 1978, pág. 9.

[58] 29 U.S.C. 160 (a); M. C. Harper, S. Estreicher, J. Flynn, op.cit., pág. 905; D. L. Gregory, "The Labor Preemption Doctrine: Hamiltonian Renaissance or Last Hurrah?", 27 Wm and Mary L. Rev. 507, 1986, pág. 514.

definir si la jurisdicción para atender una controversia obrero patronal debe recaer en los tribunales estatales o en el gobierno federal a través de la NLRB.

En otras palabras, los tribunales han tenido que elaborar criterios que permitan establecer cuándo aplica la doctrina de desplazamiento en el contexto laboral. En este análisis el elemento primordial es la conducta y no el remedio solicitado.[59] Como bien señala la mayoría, tal apreciación fue recientemente considerada por este Tribunal en el caso de Díaz v. Hospital Dr. Susoni.[60]

Como regla general[61] se ha establecido que se activa la doctrina de desplazamiento cuando están presentes

---

[59] Int. Longnshoremen's Ass'n., AFL-CIO v. Davis, 476 U.S. 380 (1986); Local 100 of United Ass'n of Journeymen and Apprentices v. Borden, 373 U.S. 690 (1963); San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959); International Union, U.A.W. v. Russell, 356 U.S. 634 (1958); United Construction Workers v. Laburnum Const. Corp., 347 U.S. 656 (1954); (Véase, además, P.R. Telephone v. Junta Rel. Trabajo, 86 D.P.R. 382, 393-394 (1962)).

[60] 169 D.P.R. ____ (2006), 2006 T.S.P.R. 146, 2006 J.T.S. 155. (Sentencia).

No obstante, los hechos de este caso son distintos a los de la controversia que está ante nuestra consideración. **Inicialmente, la Sra. Isaira Rodríguez presentó ante la NLRB una querella contra el Hospital,** planteando que su despido se debía a su participación en actividades concertadas. El caso se transó y, posteriormente, su esposo e hijos presentaron en el tribunal de instancia una demanda por daños y perjuicios por el alegado despido injustificado. La controversia se centró en determinar **si se podía reconocer una causa de acción en daños cuando el acto alegadamente discriminatorio se refería a actividades sindicales del empleado.**

[61] Son cuatro las excepciones a la regla general de desplazamiento. La primera excepción es si la controversia que se plantea ante los tribunales es idéntica a la que se plantearía ante la NLRB. Sears, Roebuck & Co. v. San Diego County, 436 U.S. 180, 197 (1978). La segunda excepción se

cualquiera de estas consideraciones: (1)los estados

reglamentan conducta que está realmente protegida o

prohibida por la NLRA; (2) los estados reglamentan conducta

que es probable o razonablemente ("arguably") protegida o

refiere a una controversia que trata sobre una conducta cuya regulación o adjudicación por los tribunales está profundamente enraizada en áreas del interés y de la responsabilidad local y no puede inferirse que la intención del Congreso fuera removerla de la esfera estatal, por lo que la intervención judicial debe prevalecer. Belknap, Inc. v. Hale et. al., 463 U.S. 491, 498 (1983); Sears, Roebuck & Co. v. San Diego County, *supra, pág. 195*; San Diego Building Trades Council v. Garmon, *supra*, pág. 244 (1959). La tercera excepción se concretiza cuando la conducta regulada por la ley estatal es de carácter marginal a las actividades reguladas por la NLRA. Belknap, Inc. v. Hale et. al., *supra*, págs. 498-499; Farmer v. Carpenters, 430 U.S. 290, 296 (1977); Linn v. Plan Guard Worker, 383 U.S. 53, 59, 61 (1966); San Diego Building Trades Council v. Garmon, *supra*, pág. 243. Por último, la cuarta excepción tiene que ver con aquella conducta que es **probable o razonablemente** protegida por la sección 7 de la NLRA. Específicamente, el Tribunal Supremo federal indicó: "We have also acknowledged an exception for conduct that is arguably protected under § 7 where the injured party has no means of bringing the dispute before the Board." International Longnshoremen's Association, AFL-CIO v. Davis, *supra*, nota 10, pág. 393. Véase, además, Sears, Roebuck & Co. v. San Diego County, *supra*, págs. 202-203. Esto implica que aun una conducta probable o razonablemente protegida por la NLRA puede eludir la doctrina de desplazamiento, siempre que la parte afectada no tenga medios para traer la disputa ante la NLRB.

Aunque ninguna de estas excepciones hay que aplicarlas a este caso, porque no existe una acción protegida o prohibida por la NLRA, si lo hiciéramos sería obvio que la controversia que se traería al foro judicial no sería la misma que se plantearía ante la NLRB. En el foro judicial se presentaría una acción por despido injustificado y represalias, mientras, en la NLRB se sometería una acción bajo algunas de las conductas protegidas por la sección 7 o prohibidas por la sección 8 del NLRA. Esto porque la NLRB sólo puede conceder remedios de acuerdo a la NLRA. También, el interés del gobierno de Puerto Rico en que los despidos sean justificados es una reglamentación que está profundamente enraizada en la responsabilidad gubernamental local que activaría la segunda de las excepciones a la norma general de desplazamiento que hemos anotado anteriormente.

prohibida por la NLRA; (3) la causa de acción ante los tribunales se sustenta en una conducta que es realmente protegida o prohibida por la NLRA; (4) la causa de acción ante los tribunales se fundamenta en una conducta que es **probable o razonablemente** (**"arguably"**) protegida o prohibida por la NLRA; y (5) cuando se proscriben causas de acción basadas en reglamentación estatal o leyes estatales que conciernen conducta que el Congreso ha tenido la intención de no regular y ha querido que se mantengan entre los remedios de autoayuda disponibles a las partes en la disputa laboral.[62] La finalidad que persigue esta norma de desplazamiento no es prohibir que los estados legislen o que los tribunales se queden sin jurisdicción en cuanto a toda conducta protegida o prohibida por la NLRA.[63] Por el contrario, el propósito es ofrecer a los trabajadores un remedio, a través de un foro adecuado, evitando conflictos en la interpretación de la normativa obrero patronal y manteniendo uniformidad para posibilitar su aplicación consistente a las controversias laborales.[64]

---

[62] Belknap, Inc. v. Hale et. al., *supra*, pág. 498; Sears, Roebuck & Co. v. San Diego County, *supra*, pág. 200 (1978); Farmer v. United Brotherhood Carpenters, *supra*, págs. 295–296; Machinists v. Wisconsin Employment Relations Commission, 427 U.S. 132, 139–140, 147–148 (1976); San Diego Building Trades Council v. Garmon, *supra*, págs. 243–244.

[63] Sears, Roebuck & Co. v. San Diego County, supra, págs. 194–195; Farmer v. United Brotherhood Carpenters, supra, pág. 296.

[64] San Diego Building v. Garmon, supra, págs. 242–243;(Véase, además, Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517, 523 (1977) y P.R. Telephone v. Junta Rel. Trabajo, *supra*, págs. 389–390).

El Tribunal Supremo federal ha discutido cómo las cortes estatales pueden determinar si una actividad está **probable** o **razonablemente** cobijada o prohibida por la NLRA, de manera que esté bajo la jurisdicción exclusiva de la NLRB. En concreto, el máximo foro federal ha definido el concepto **"arguably"** de la siguiente forma:

> If the word "arguably" is to mean anything, it must mean that **the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor.** That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board… **The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation.**[65]

Es necesario, pues, que la parte que levanta la defensa de falta de jurisdicción sobre la materia presente

---

[65] <u>International Longshoremen's Assn. v. Davis</u>, *supra*, pág. 395.
Es evidente que este pasaje, refraseado de <u>Marine Engineers v. Interlake S.S. Co.</u>, 370 U.S. 173, 182-184 (1962), sugiere que la corte, **primero**, debe decidir si hay un caso probable o razonable de desplazamiento. De haberlo, el mismo debe referirse a la Junta. De lo contrario, debe ser el Tribunal el que atienda el reclamo. En el caso de <u>International Longshorement's Ass'n v. Davis</u>, *supra*, el Tribunal Supremo federal desestimó la posición de la unión (International Lonshoremen Association, ILA) porque ésta no puso en condiciones a la corte de apoyar su contención. Según explica el Tribunal:

> It [ILA] does not undertake any examination of Davis' duties as a ship superintendent. It makes no attempt to show that Davis was more like an employee than a supervisor… It points to no evidence in the record indicating that Davis was not a supervisor. It does not argue that Davis' job was different… Its sole submission is that Davis was arguably an employee because the Board has not decided that he was a supervisor. <u>International Longshorement's Ass'n v. Davis</u>, *Íd*, pág. 396.

argumentos convincentes y consecuentes.  Los tribunales no pueden adjudicar una controversia jurisdiccional a base **exclusivamente** de meras alegaciones de la parte demandante. Incluso, en términos de las relaciones obrero patronales, la parte que levante la defensa de falta de jurisdicción debe demostrar que la NLRB asumirá jurisdicción y resolverá el caso a su favor.[66]

Es importante resaltar que una alegación aludiendo al término "acción concertada" no es lo mismo que la alegación de una conducta.  Una conducta es la manera de proceder de un individuo en relación con los demás, es un comportamiento.[67]  Para que la alegación de un concepto jurídico complejo y técnico, como el de actividad concertada, se convierta en la alegación de una conducta hay que referirla a hechos particulares que, de probarse, constituirán la acción.

La mayoría alude al caso de <u>Vargas v. Molinos, Inc.</u>, supra, y expone que en esa ocasión resolvimos desestimar el caso por falta de jurisdicción fundamentándonos en las alegaciones de la parte demandante.  Sin embargo, este caso se distingue fácilmente del que hoy se encuentra ante nuestra consideración, pues <u>Vargas</u> sucede en el contexto de una organización sindical y un convenio laboral.  Uno de los codemandados era una Unión y contra ésta se reclamó que faltó al deber de justa representación.

---

[66] <u>International Longshoremen's Assn. v. Davis</u>, *Íd.*, págs. 395, 398.

[67] M. Moliner, <u>Diccionario de Uso del Español</u>, Editorial Gredos, Madrid, España, pág. 715, 1991.

No podemos obviar que la determinación apresurada de un cuestionamiento jurisdiccional puede dejar sin remedio a una parte.  En lo que a nosotros concierne, el Tribunal Supremo federal ha reconocido que la intención del Congreso al aprobar la NLRA no era privar de remedios a las partes. Por eso, cuando la NLRB, como foro, no puede ofrecer un remedio, es improcedente determinar que los tribunales no tienen jurisdicción para atender la controversia.[68]  Más aún, corresponde al foro judicial pasar juicio sobre un planteamiento de falta de jurisdicción sobre la materia. Al respecto, el Tribunal Supremo federal determinó "… and when a claim of Garmon pre-emption is raised, it must be considered and resolved by the state court."[69]

### III.

La Opinión Mayoritaria resuelve que este Tribunal no tiene jurisdicción para atender la controversia que está ante nuestra consideración. Disentimos. El eje central de esta determinación es el concepto "actividad concertada". Sorpresivamente, la Opinión Mayoritaria asume la existencia de una actividad concertada sin definir esta figura jurídica, sin aplicar las características del concepto a los hechos y sin contar con un expediente que sustente su apreciación. Sólo se utilizan las alegaciones iniciales del

---

[68] International Longshoremen's Assn. v. Davis, *supra*, págs. 395, 398; United Contruction Workers v. Laburnum Const. Corp., *supra*, págs. 663-664. (Véase, además, Rivera v. Security Nat. Life Ins. Co., *supra*, pág. 525.)

[69] International Longshoremen's Assn. v. Davis, *supra*, pág. 393.

señor González Sotomayor como concluyentes de su posición de que existía dicha "actividad concertada".

En consecuencia, la Opinión Mayoritaria asume, en primer lugar, que existe una práctica ilícita por parte del Mayagüez Resort & Casino al interferir con la formación de una organización laboral, según la Ley Taft-Harley; asume, también, la existencia de una campaña de organización sindical liderada por el señor González Sotomayor y, por último, asume que el despido del señor González Sotomayor fue motivado por actitudes anti-sindicales del Mayagüez Resort & Casino. Estas erróneas consideraciones sustentan su determinación de que la jurisdicción exclusiva recaía en la NLRB.

Contrario a la mayoría, pienso que la mera mención por el señor González Sotomayor del término jurídico de "actividad concertada" no puede ser suficiente para resolver que el foro judicial no tiene jurisdicción para atender este caso. Del expediente que está ante nuestra consideración no surge que el señor González Sotomayor realizó una acción concertada y el propio patrono Mayagüez Resort & Casino planteó la defensa de falta de jurisdicción, rechazando categóricamente que el despido haya sido el resultado de una actividad concertada. En este contexto, no se cumple con el estándar de una conducta **probable o razonablemente ("arguably")** protegida o prohibida por la NLRA, que active la jurisdicción exclusiva de la NLRB.

Para salvar esta situación, es necesario que puntualicemos en las características que definen el término actividades concertadas en el campo de las relaciones obrero patronales. Las mismas se derivan de la jurisprudencia previamente discutida. Éstas nos revelan que las acciones concertadas pueden darse en el ámbito colectivo o individual, ya sea para proteger los derechos de los obreros a organizarse para negociar colectivamente con su patrono o para establecer términos y condiciones de empleo que sean de ayuda mutua y protección a los obreros. Algunas manifestaciones de las actividades concertadas en el ámbito individual son: la defensa de un acuerdo consignado en un convenio; la afirmación del derecho de los trabajadores o en su representación; el apoyo a las acciones de un sindicato o simplemente el acto de afiliarse a un sindicato.

Sin importar el ámbito en el cual se suscite la acción concertada, para cualificarla como tal, ésta debe cumplir con las siguientes características: (1) debe haber una disputa laboral; (2) debe estar atada a mejorar condiciones de trabajo; (3) debe existir un reclamo de un derecho específico, no puede limitarse a quejas y es importante conocer de dónde surgen esos derechos reclamados; (4) no puede intervenir ni ser un reclamo privado a una prerrogativa gerencial; (5) debe realizarse en representación, ayuda mutua y protección, del resto de los trabajadores; (6) pueden ocurrir antes, después o en el

mismo momento en que se origina la demanda de los trabajadores; (7) no requiere el permiso del patrono para llevarse a cabo. Además, en nuestra jurisdicción, son acciones protegidas constitucionalmente.

Es importante señalar que no todas las actividades concertadas están protegidas por la Ley Taft-Harley. Esta protección se puede perder dependiendo de la forma en que se realice la actividad y el propósito de la misma. Por eso, las actividades concertadas para ser válidas deben ser actos legales, fundamentados en un propósito legal. Deben, además, utilizar medios legales en su consecución, es decir, tienen que ser actos pacíficos y ordenados. Su manifestación no puede representar una violación del contrato. Tampoco pueden ser una actuación indefendible, por constituir una deslealtad al patrono, que es innecesaria para realizar la actividad concertada legítima. En otras palabras, las actividades concertadas no pueden consistir de imputaciones incorrectas, hechas deliberadamente o con la intención de falsificar o maliciosamente perjudicar al patrono. De igual forma, no deben resultar difamatorias, insultantes o manifiestamente destructivas de la disciplina a la que aspira un patrono.

Al examinar el expediente de este caso, es obligatorio concluir que no están presentes ningunas de las características que conforman la figura jurídica denominada actividad concertada. No existe una disputa laboral, según ésta se define en la Ley Taft-Harley. Lo único que se

evidencia del expediente es la celebración de una reunión pautada por la gerencia de Mayaguez Resort & Casino, a petición de dos empleados interesados en adelantar sus intereses particulares. Fue una reunión donde sólo dos empleados expresaron quejas dirigidas a cuestionar las prerrogativas gerenciales sobre la distribución de las horas de trabajo entre los meseros de mayor antigüedad que había desarrollado la administración del hotel. Tal apreciación se manifiesta de las expresiones del señor Betánces López y la señora Estrella:

> **Betánces López:** Que no quiere hablar por nadie, que está hablando sólo por él y lo que entiende debe mejorar. Que cuando él comenzó a laborar como mesero estaba en un listado y era de los últimos y entendía que cuando llevara muchos años, como ahora, le estarían dando más trabajo que a los nuevos. Que lo que ocurre es que el trabajo lo están distribuyendo equitativo para todos, no importa si lleva poco o mucho tiempo. Considera injusto que después que a él le pasó eso, para los nuevos ahora es más fácil. Raymond indica que siente mucho orgullo de trabajar aquí y le gusta.
>
> Se le pregunta a todos los demás empleados si tienen algún comentario y sólo Rosa Estrella tomó la palabra:
>
> **Estrella:** Relativamente tiene la misma queja de Raymond. Ésta añadió que se sentía incómoda con relación al incidente que hubo de una cartera desaparecida.[70]

Es evidente que esta reunión fue una rutinaria donde se atendieron problemas y preocupaciones recurrentes en cualquier lugar de trabajo. No se evidencia una disputa obrera ni una reclamación en específico para adelantar el

---

[70] Apéndice III del Recurso de *Certiorari* ante el Tribunal Apelativo, Minuta de Reunión, *op.cit.*, pág. 3.

interés de todos los trabajadores. Estas quejas no pueden catalogarse como actividades concertadas bajo las definiciones de la Ley Taft-Harley. ¿Acaso la actividad concertada fue la celebración de una reunión donde participaron empleados y gerenciales?

Para que una actividad individual de un trabajador pueda ser considerada una actividad concertada, la misma tiene que tener el propósito claro de adelantar los intereses del colectivo de trabajadores. ¿Cómo se logra esto en el escenario anterior donde un grupo de empleados de mayor antigüedad está recabando que el patrono les asigne las horas extra de trabajo en perjuicio de los empleados más jóvenes? En concreto, esta solicitud va en contra de la nueva práctica del patrono de distribuir equitativamente las horas de trabajo para limitar el pago de tiempo extra y proteger el empleo de todos los meseros. No puede ser considerada una acción concertada el intento de una minoría de reducir la seguridad de empleo de sus compañeros de trabajo. Al respecto, el señor Muñoz, uno de los gerentes, expuso:

> Este le indica a Raymond Betánces que en el pasado por estar favoreciendo a los empleados de mayor "seniority" se causaba mucho sobre tiempo. Que quizás al principio fue de esa manera, pero dio instrucciones de que el trabajo se distribuyera para evitar el sobre tiempo. Además, teníamos otro problema y era la poca retención de meseros de banquetes por falta de trabajo.[71]

---

[71] Apéndice III del Recurso de *Certiorari* ante el Tribunal Apelativo, Minuta de Reunión, *Íd.*, págs. 3-4.

Se muestra de la reunión que los quejosos salieron satisfechos con las explicaciones que les ofreció la administración del hotel. También se evidencia que el resto de los empleados estaba contento con su trabajo.

Todos los demás empleados sólo comentaron que se sentían a gusto y venían a trabajar.

El Sr. Raymond Betánces y la Sra. Rosa Estrella mostraron entendimiento a las razones que la gerencia le proveyó sobre las alegaciones.[72]

Los reclamos de uno o varios empleados a la gerencia, en cuanto a sus condiciones individuales de trabajo, su salario o beneficios marginales, sin referencia o preocupación alguna al interés del resto de los empleados, no puede dar margen a que se cataloguen dichos reclamos como actividades concertadas cubiertas en forma exclusiva bajo las disposiciones de la Ley Taft-Harley. La inevitable consecuencia de esa ecuación es que los tribunales en Puerto Rico no tendrían jurisdicción en ningún asunto que tenga que ver con reclamos similares donde alguno de los reclamantes sea despedido.

Por otro lado, la Opinión Mayoritaria asume, además, que el despido del empleado fue una acción anti-sindical de Mayagüez Resort & Casino, a pesar de que el expediente no sustenta tal afirmación. Contradictoriamente, el legajo del caso refleja que el mismo patrono alegó que el despido del señor González Sotomayor fue motivado por otros asuntos no relacionados a la alegada actividad concertada. En

---

[72] Apéndice III del Recurso de *Certiorari* ante el Tribunal Apelativo, Minuta de Reunión, *Íd.,* pág. 4.

concreto, que había sido despedido por su historial disciplinario.[73] Incluso, para validar su posición, el patrono incorpora una porción de una deposición en la cual el empleado declara que fue despedido por un alegado mal funcionamiento en su trabajo.[74]

También, la Opinión Mayoritaria asume que el Mayagüez Resort **conocía de las intenciones de González de organizar a los empleados de su departamento y que por eso fue que lo despidió**. A esta conclusión se llega sin que del expediente surja que Mayagüez Resort & Casino conocía o debía conocer de las alegadas actividades concertadas del señor González Sotomayor, dirigidas a organizar a sus compañeros empleados de su departamento.

En el caso que nos ocupa, la decisión mayoritaria dejaría sin un remedio al señor González Sotomayor porque al recurrir a la NLRB, este ente administrativo desestimará también la controversia ya que no existe una acción protegida o prohibida, es decir, no hay una actividad concertada que active la jurisdicción exclusiva de la NLRB. La controversia de este caso no se resuelve con una norma contenida en la NLRA, sino con nuestra legislación sobre despido injustificado o represalias.

Este Tribunal tiene la responsabilidad indelegable de asumir jurisdicción cuando en efecto la tenga. Esto es

---

[73] Apéndice IV, Contestación a la Querella, *op.cit.*, pág. 13. Véase, además, Apéndice VII, *op.cit.*, pág. 40.

[74] Apéndice VII, Solicitud de Desestimación de la Querella y Réplica a Memorando de Derecho sometida por Mayagüez Resort & Casino, *op.cit.*, págs. 53-54.

parte del delicado balance de impartir justicia. La decisión de no asumir jurisdicción debe ser el resultado de una ponderación cuidadosa de las leyes, la controversia y el expediente del caso que esté ante nuestra consideración. De esta forma, podremos proveer el remedio que en derecho le corresponde a las partes en controversia. Por carecer la Opinión Mayoritaria de esta ponderación, disiento. Determinaría, en vez, que el foro judicial tiene jurisdicción para atender esta controversia y devolvería el caso al Tribunal de Primera Instancia para que determine si el despido del señor González Sotomayor fue justificado.


                                        Liana Fiol Matta
                                        Jueza Asociada